## YOST, ADMINISTRATOR *v.* DUNK.

[No. 8,413. Filed November 6, 1914.]

1. EXECUTORS AND ADMINISTRATORS.—*Claims.*—*Requiring Claimant to Testify.*—*Discretion of Court.*—Under §526 Burns 1914, Acts 1883 p. 102, relating to the competency of witnesses in actions in which executors, administrators, heirs or devisees are parties, providing that the court "may, in its discretion, require any party to a suit or other person to testify, and any abuse of such discretion shall be reviewable on appeal", it is the duty of the court on appeal to examine into the circumstances under which the discretion was exercised, since there can be no general rule for determining whether there has been such abuse. p. 154.

2. EXECUTORS AND ADMINISTRATORS.—*Action on Claim Against Estate.*—*Testimony of Claimant.*—*Discretion of Court.*—In an action by decedent's daughter on a claim against his estate for services in caring for him, where there was evidence sufficient to remove the presumption that her services were rendered gratuitously, and in view of the fact that he had property and that she was under no greater moral obligation than his other children to care for him, a contract between them could be inferred, the court did not abuse its discretion in calling the claim-

ant as a witness, under the provisions of §526 Burns 1914, Acts 1883 p. 102, relating to the competency of witnesses in actions in which executors, administrators, etc., are parties. p. 155.

From Tippecanoe Circuit Court; *Richard P. DeHart,* Judge.

Action by Rachael Dunk on a claim for services against the estate of David Yost, deceased. From a judgment for claimant, Charles W. Yost, administrator, appeals. *Affirmed.*

*Joseph B. Ross,* for appellant.

*Morris R. Parks* and *George D. Parks,* for appellee.

SHEA, J.—Action by appellee upon the following claim filed against the estate of appellant's decedent:

> "Estate of David Yost, deceased, to Rachel Dunk, Dr. To board and washing, nursing, care and attention in sickness and in health of David Yost, from April, 1902, to the date of his death, November 26, 1910, continuously, one hundred four (104) months, at—Seventeen dollars ($17.00) per month...............$1,768.00"

Decedent was claimant's father. Briefly, the evidence shows that claimant for a few years prior to her marriage kept house for her father. After her marriage she removed to a separate farm and there lived with her husband until nine years prior to the death of her father, when she, together with her husband Orley Dunk, and their two children removed to his farm consisting of forty acres of land situated in Tippecanoe County, where decedent made his home in the family up to the time of his death. Five years after the removal of claimant and family to the farm, Orley Dunk purchased and paid for twenty acres of the farm, upon which twenty acres the house was situated, the barn being located on the twenty acres retained by decedent. There is evidence tending to show that during said period of time Orley Dunk paid grain rent for the use of said land. There does not appear to be any evidence to show that decedent paid anything for the board, care and attention given him during said period. At the time of his death he was seventy-

eight years old, and during the time that claimant's family lived upon the farm, he was unable to do hard manual labor, being in feeble health, and was at intervals under the care and attention of a physician. He did light work such as splitting wood and kindling and cultivating the garden. He did nothing in the way of plowing, seeding or harvesting the crop. The evidence is undisputed that claimant was kind, patient and careful with her father, and gave him such attention as a man in his condition of health required, doing cooking, washing and all her household work. Six disinterested witnesses testified to conversations with decedent which are here set out: Henry Heddrich testified that decedent stated to him: "I am helpless and sleep as long as I care to. I am lots of trouble, and I expect to pay for it. I have 20 acres here (he pointed to the right, we were facing to the east) that belongs to my daughter and Mr. Dunk at the end of my life to pay for my trouble." Wilbert Landis testified that in speaking of a cistern witness was making decedent said: "It is all right for me as long as I live, but of course after I die then it will go to my daughter Rachel and Orley for the keeping of me while I have been staying with them." Philip Yost testified that decedent in speaking of appellee and her care for him said that "he (decedent) intended after he was through with what little he had—he intended for her (appellee) to have it. He said she had earned it; she had earned what he had left, and he intended for her to have it; he had been sick a great deal and she had given him good care." Harry W. Turnipseed testified that decedent said to him: "I am getting old and feeble. I stay up here with Orley's. I have made my home with them. I calculate for Rachel to have the other twenty acres when I am through with it." John H. Miller testified that in a conversation with decedent a short time before his death, decedent said "that he had made that his home, and that he had been some trouble to the family and some expense and he felt like they ought to have

this land for that trouble.   *   *   *   He said that he felt like he owed it to her, or something to that effect.  I think that was the words.  That he owed them that much.''  Margaret A. Miller who had known decedent many years testified as follows:  ''He said that he wanted Rachael to have this farm for taking care of him, and he asked us if we thought it would be necessary to make a will in order that she get this property and we said that we thought it would probably be necessary to make her sure of the property, and he said: 'Well I am coming to town some of these days and have a will made up and will this property to her for taking care of me'.''

There was a trial by jury and judgment for appellee for the amount of her claim.  The only error assigned is the overruling of appellant's motion for a new trial.  The reasons therefor are as follows:  (1) That there was an abuse of judicial discretion in calling appellee on the trial of said cause before the jury to testify in her own behalf.  (2) That the verdict of the jury was not sustained by sufficient evidence.  (3) That the verdict of the jury was contrary to law. (4) Error in admitting certain testimony of appellee.

The statute specially provides that the court may, at its discretion call an interested witness and require him to testify.  It is rightly insisted that this is a legal discretion to be exercised with care.  Section 526 Burns 1914, Acts 1883 p. 102, provides that in cases of this kind the court ''may, in its discretion, require any party to a suit or other person to testify, and any abuse of such discretion shall be reviewable on appeal.''  Prior to the enactment of this statute (Acts 1883 p. 102) the action of the court in exercising the discretion of requiring a party to testify in such cases was not subject to review.  The statute as it now reads, makes it the duty of the court on appeal to examine into the circumstances under which the discretion was exercised.  It has been repeatedly held that every case where the discretion is so exercised must be determined on

its own merits, and upon the facts as shown, and no general rule can be laid down which would be applicable to all cases. *Dearing* v. *Coulson* (1911), 48 Ind. App. 414, 96 N. E. 9; *Talbott* v. *Barber* (1894), 11 Ind. App. 1, 12, 38 N. E. 487, 54 Am. St. 491; *Willitts* v. *Schuyler* (1891), 3 Ind. App. 118, 29 N. E. 273; *Forgerson* v. *Smith* (1885), 104 Ind. 246, 3 N. E. 866.  While the opinion in *Dearing* v. *Coulson, supra,* does not disclose blood relationship between the parties, it does disclose that claimant lived in the family as housekeeper, and the other facts stated in the case are quite similar to the facts as disclosed by the evidence in the case under consideration, for instance, one witness testified that she was in the home of testatrix eight weeks after appellee commenced work, and that testatrix, in speaking of appellee and of her excellent qualities as a housekeeper said to the witness that she intended "to will her (appellee) ten acres, including the orchard, house and barn", for doing her work.  The court said: "While this is not absolute proof of an agreement, it is a strong circumstance indicating that such agreement had been made, and we think warranted the court in requiring appellee to give her version of the contract.  If there was anything in the testimony of appellee, or in her manner of testifying, that raised a doubt as to her candor and truthfulness, the court would naturally exclude her evidence from consideration."

The evidence in the case at bar was very much stronger than the evidence in the case of *Dearing* v. *Coulson, supra.*

2. While, as stated in the case of *Dearing* v. *Coulson, supra,* this evidence is not absolute proof of an agreement existing between decedent and appellee, which, it is correctly urged by appellant must be shown before there can be a recovery, and must be fairly inferable from the evidence before the claimant could be called as a witness without an abuse of discretion, the repeated statements of decedent that he intended to pay claimant for her work; that he intended to will her the twenty acres of land in ques-

tion, and especially the statement that he owed his daughter that amount for her care and attention to him, which implies a meeting of the minds of the parties, taken in connection with the fact that he was old and feeble, unable to do hard manual labor, that he needed and received special attention from his daughter, both in health and sickness, for which he paid nothing, is sufficient to remove the presumption that the daughter's services were rendered gratuitously.

Decedent had property out of which he could pay for his care. This daughter was under no higher moral obligation to care for her father under such circumstances than his other children, who are resisting this claim. It is not reasonable to suppose that decedent intended that his daughter should go unrewarded, nor that the claimant had any other expectation than that she would be paid, however strong might be her affection for her father. Under such evidence, a contract between the parties could well be inferred, and the court did not abuse its discretion in calling claimant as a witness. *Williams* v. *Resener* (1900), 25 Ind. App. 132, 56 N. E. 857; *Stewart* v. *Small* (1894), 11 Ind. App. 100, 38 N. E. 826; *Hill* v. *Hill* (1889), 121 Ind. 255, 261, 23 N. E. 87. In the case of *Myers* v. *Manlove* (1913), 53 Ind. App. 327, 101 N. E. 660, the court said that the action of the trial court in exercising the discretion provided by statute must depend upon the particular facts in each case. ''This we regard as the correct rule in determining whether the court in any case is justified in exercising the discretion given by the statute. It is not an arbitrary privilege granted the trial court, but nevertheless the statute is to be reasonably construed and applied to meet the particular ends of justice it was intended to subserve. The trial court sees the witnesses, and has a better opportunity to draw correct inferences from the testimony than a court of appellate jurisdiction.'' This we regard as the true rule, and when this standard is applied to the facts in this case, we think there was no abuse of the trial court's discretion in requiring claimant to testify.

Many cases are cited and analyzed by appellant's learned counsel in an able brief, in an effort to show that there was an abuse of discretion. No good purpose could be subserved by reviewing said cases, as we adhere to the rule as above announced, which is peculiarly applicable to the facts in this case.

It follows that the other reasons assigned in support of the motion for a new trial are not well taken. No error appears in the record. Judgment affirmed.

NOTE.—Reported in 106 N. E. 644. See, also, under (1, 2) 40 Cyc. 2339.